# EXHIBIT G

## DECLARATION OF JEFF CREAMER

I, Jeff Creamer, hereby declare as follows under the penalty of perjury.

1. I am Jeff Creamer, Chief Executive Officer of NST Global, LLC, d/b/a SB Tactical ("SB Tactical"), and I have held this position since 2020. Unless otherwise stated, this declaration is based on my personal knowledge and belief and my review of business records of SB Tactical. If called as a witness, I could and would testify competently to the contents of this declaration.

2. I am over 18 years of age, a citizen of the United States, and of sound mind.

3. SB Tactical is an LLC that specializes in designing and selling quality firearm accessories—primarily stabilizing braces.

4. SB Tactical is a federal firearms licensee under the Gun Control Act.

5. SB Tactical is a member of the Firearms Regulatory Accountability Coalition.

### SB Tactical Stabilizing Braces

6. In 2012, SB Tactical's co-founder Alex Bosco—a Marine Corps and Army veteran—developed the Pistol Stabilizing Brace® after he observed a range master reprimand a disabled combat veteran with a prosthetic limb for failing to have adequate control over his weapon.

7. Bosco developed the Pistol Stabilizing Brace to promote shooting inclusion for service-disabled military veterans and individuals with limited mobility.

8. In 2013, Alex Bosco and Grant Shaw founded SB Tactical to bring to market the Pistol Stabilizing Brace.

9. The Pistol Stabilizing Brace is an orthotic device that attaches to the rear of a pistol and that the shooter secures to his forearm using one or more elsatomeric flaps and a strap:



10. The Pistol Stabilizing Brace was designed to allow shooters to more safely grip, stabilize, and fire a pistol.

11. More specifically, as the original Pistol Stabilizing Brace patent shows, these devices secure the pistol to a shooter's forearm in order to stabilize firing:[1]



12. SB Tactical did not design the Pistol Stabilizing Brace as a rifle stock or to otherwise

---

[1] *See* U.S. Patent No. 8,869,444 B2 (issued Oct. 28, 2014), https://patentimages.storage.googleapis.com/0e/ef/63/3020eaabf1d854/US8869444.pdf.

2

be used for shouldering when firing a pistol.

13. Wounded veterans and marksmanship enthusiasts with limited mobility use SB Tactical's stabilizing braces to participate in shooting sports they would otherwise be unable to enjoy.

14. Able-bodied customers also use SB Tactical's stabilizing braces because the products provide a stable platform that allows for safer and more accurate firing.

15. Between January 1, 2020 and the publication of the Rule on ATF's website, SB Tactical sold 2,331,862 stabilizing braces. The vast majority of SB Tactical's business—98.82%—consists of producing and selling stabilizing braces.

### ATF Classification Of Stabilizing Braces

16. In November 2012, prior to bringing the Pistol Stabilizing Brace to market, SB Tactical submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") a letter requesting a ruling on the classification of the Pistol Stabilizing Brace under the "National Firearms Act" ("NFA"). SB Tactical also provided a sample brace for inspection by the "Firearms Technology Branch."

17. In a letter dated November 26, 2012, ATF provided SB Tactical with a ruling, stating that adding a brace to a firearm "does not convert that weapon to be fired from the shoulder and would not alter the classification of a pistol or other firearm."

18. A true and correct copy of this ruling is attached to the Complaint as Exhibit L.

19. Relying upon this classification letter from the ATF, SB Tactical began selling the Pistol Stabilizing Brace in 2013.

20. For the next eight years, ATF cultivated consumer demand for stabilizing braces by repeatedly ruling that new stabilizing brace designs from SB Tactical and its numerous competitors

did not facilitate shouldering and thus did not subject brace-equipped guns to additional regulation under the NFA.

21. In 2014, ATF ruled that "firing a pistol [equipped with a brace] from the shoulder would not cause the pistol to be reclassified."

22. A true and correct copy of this ruling is attached to the Complaint as Exhibit M.

23. In 2015, ATF published an open letter reasserting its position that a stabilizing brace "may be attached to a handgun without making a[n] NFA firearm."

24. A true and correct copy of this letter is attached to the Complaint as Exhibit O.

25. In 2015, ATF issued SB Tactical a classification letter opining that—with a minor modification—a gun equipped with SB Tactical's adjustable stabilizing brace "would not be a 'short-barreled rifle.'"

26. A true and correct copy of this ruling is attached to the Complaint as Exhibit N.

27. In 2017, ATF issued another ruling opining that "that stabilizing braces are perfectly legal accessories for large handguns or pistols." It further stated that "incidental, sporadic, or situational 'use' of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder" would not "constitute 'redesign.'"

28. A true and correct copy of this ruling is attached to the Complaint as Exhibit Q.

29. SB Tactical relied on these repeated rulings and representations from ATF to market its products to and assure its customers about the legal classification of its stabilizing braces.

30. In 2021, ATF published a Notice of Proposed Rulemaking ("Notice") to change the definition of "rifle" to include some pistols equipped with stabilizing braces.

31. On January 31, 2023, ATF issued a Rule titled "Factoring Criteria for Firearms with Attached 'Stabilizing Braces.'" Around the same time, ATF published documents on its website

identifying "[c]ommercially available firearms equipped with a 'stabilizing brace'" and "[c]ommon weapon platforms with attached 'stabilizing brace' designs" that "are short-barreled rifles" under the Rule ("the Adjudications"). (These documents are available at https://www.atf.gov/rules-and-regulations/factoring-criteria-firearms-attached-stabilizing-braces).

32. SB Tactical designed and sold many stabilizing braces that may be covered by the Rule at issue in this case.

33. Per the Adjudications, the following stabilizing braces are expressly classified as creating short-barreled rifles when affixed to certain pistols: the SBA3, the SBA4, the SBM4, the SOB, the SBX-K, the SB-Mini, the SBL, the SBPDW, the MPX, the AKTF, the SBL, the SB5, the SBT5KA, the HKPDW, the CZPDW, the SBT, the BREN2, the Maxim PDW, the TF1913, the SB47, the SBTi, the SBTEVO, and FS1913, and the FS1913A.[2] The Adjudications also classify as short-barreled rifles products that use components designed by SB Tactical, including the Q, model Mini Fix with Proprietary Brace and the Q, model Sugar Weasel with SBA3 Attached.

34. SB Tactical had previously submitted to ATF for evaluation several of the braces classified in the Adjudications.

35. The Preamble to the Rule effectively accuses SB Tactical of trying to develop products to circumvent the NFA and to deceive the public regarding the legal classification of those products. *See* Rule, 88 Fed. Reg. at 6,503–06, 6,544–48, 6,555.

36. To the contrary, attorneys representing SB Tactical—including former ATF Director, Michael Sullivan—met with ATF repeatedly before the issuance of the Notice and the Rule.

---

[2] ATF misidentified several of SB Tactical's products. This list uses the correct trade name for each SB Tactical brace pictured in the Adjudications' photographs.

During those meetings, SB Tactical voluntarily provided physical examples of its brace designs and for years was told by ATF that there were no issues. Indeed, ATF repeatedly conveyed that it had no concerns at all with SB Tactical's products. SB Tactical also received ATF approval to use the phrase "ATF Compliant" in its marketing materials. It was not until the middle of 2019 that ATF asked SB Tactical to submit some of its products—including the SBA3—for classification and raised concerns about SB Tactical's advertising. In response, SB Tactical made the submissions and changed its advertising to comply with ATF's requests. Contrary to the suggestion in the Preamble, *see* Rule, 88 Fed. Reg. at 6,492–93, ATF never issued final classification letters on any of the products submitted in 2019, including the pistol affixed with an SBA3.

37. SB Tactical's meetings with ATF reasonably led SB Tactical to believe that it was operating in accordance with the law. Indeed, SB Tactical has been relentlessly diligent in its attempts to comply with the NFA and GCA, notwithstanding ATF constantly changing its position.

## The Rule Substantially and Irreparably Harms SB Tactical

38. It is my understanding that ATF's Rule and associated Adjudications will fundamentally alter and expand ATF's application of the definition of "rifle" to sweep in pistols equipped with stabilizing braces.

39. It is also my understanding that ATF's Rule will subject the millions of customers currently in possession of stabilizing braces to increased and burdensome regulation, placing them at risk of criminal sanctions for inadvertent noncompliance with the NFA.

40. If the Rule is not enjoined, I believe that direct purchases of SB Tactical Pistol Stabilizing Braces will substantially diminish or cease entirely.

41. SB Tactical's sales have already plummeted. In 2020, SB Tactical was selling an

average of 92,000 braces per month. In 2022, the year after ATF issued its Notice proposing to regulate stabilizing braces, SB Tactical's average monthly brace sales fell below 44,000. In January 2023—the month ATF published a draft of the Rule on its website—it sold only 19,300 braces. SB Tactical believes sales will continue to drop now that the Rule has gone into effect.

42. Because stabilizing braces comprise 98.82% of SB Tactical's revenues, this ongoing drop in brace sales threatens the viability of the business.

43. Since 2021—when ATF issued its Notice—the drop in sales of stabilizing braces forced SB Tactical to reduce its workforce by 61%.

44. As a result of the Rule, SB Tactical will let go six of its twelve remaining employees within the next 60 days.

45. If this trend continues, SB Tactical may close its business altogether within a matter of months.

46. SB Tactical also continues to suffer reputational damage each day the Rule remains in effect. SB Tactical's customers purchased their braces and brace-affixed products with the understanding that braces were legal accessories for large handguns or pistols. ATF's regulatory about-face—combined with its disparaging statements about SB Tactical in the Rule's Preamble—continues to cause SB Tactical to suffer an immeasurable loss of consumer goodwill.

47. If the Rule and associated Adjudications are not enjoined, there is a significant risk that SB Tactical will not be able to weather the loss of its business for the extended period of time necessary to resolve this lawsuit.

48. Enjoining the Rule and Adjudications would redress the harms to SB Tactical. Enjoining these actions would allow customers to continue using stabilizing braces without triggering burdensome regulations under the NFA and GCA, thereby alleviating the economic and

reputational harms caused by the Rule and Adjudications.

## Exhibits

49. The following documents affixed as exhibits to the Complaint and referenced herein are true and correct copies of the originals:

    a.     Exhibit L: FTB Letter 2013-0172 (Nov. 26, 2012).

    b.     Exhibit M: FTB Letter 301737 (Mar. 5, 2014).

    c.     Exhibit O: ATF, Open Letter on the Redesign of Stabilizing Braces (Jan. 16, 2015).

    d.     Exhibit N: ATF Letter 304296 (Dec. 22, 2015).

    e.     Exhibit Q: FATD Letter 5000 (Mar. 21, 2017).

    f.     Exhibit S: SB Tactical Response Letter to ATF's Preliminary Classification of the SBA3 (Mar. 13, 2020).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February  8 , 2023

*/s/ Jeff Creamer*
Jeff Creamer
President, SB Tactical, Inc.